# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 1178 | **DATE** | 5/5/2011 |
| **CASE TITLE** | Fogel et al vs. Bukovic et al | | |

**DOCKET ENTRY TEXT**

The Court denies Plaintiffs' consolidated motion for sanctions for abuse of discovery process and to quash subpoenas [17]. Defendants shall file a brief addressing the question whether they are entitled to their reasonable expenses by 5/12/11. Plaintiffs shall file a response by 5/17/11.

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

On February 18, 2011, Defendants Lynwood Police Sergeant Bukovic, Lynwood Police Officer Suroviak, and the Village of Lynwood removed the instant case from the Circuit Court of Cook County to this Court. (R. 1.) Plaintiffs Richard Fogel, Trustee for the Bankruptcy Estate of Belinda Montgomery, and Robert Reid allege that Defendants failed to protect them from Ms. Montgomery's deceased husband, who on October 8, 2008, shot Ms. Montgomery and himself. (R. 1 at 41-63.) In their Third Amended Complaint, Plaintiffs submit that the Defendant officers failed to arrest Ms. Montgomery's husband on October 6, 2008, following a domestic dispute. (*Id.* at 52-53.) They bring claims for violation of the Illinois Domestic Violence Act, for intentional infliction of emotional distress, for civil conspiracy, and for violation of civil rights. (*Id.* at 51-62.)

Previously, while the case was before the Circuit Court of Cook County, Defendants filed a motion to dismiss, arguing that the statute of limitations barred Plaintiffs' state-law actions because, although Ms. Montgomery's injuries arose from Defendants' alleged failure to arrest Ms. Montgomery's husband on October 6, 2008, Plaintiffs did not file their complaint until more than a year later, on December 9, 2009. (R. 25 at 2-3.) In response, Plaintiffs argued that Illinois law tolled the statute of limitations until January 2009 "based on the severity of Plaintiff Montgomery's life-threatening injuries and incapacitation[.]" (*Id.* at 22-23.) The state court denied Defendants' motion to dismiss "after accepting as true all well-pled facts of the first amended complaint" on the ground that "plaintiff alleged sufficient facts to establish that she was not fully able to manage her person or estate and was, therefore, under a legal disability." (*Id.* at 50-51.) Defendants subsequently sought discovery with respect to Ms. Montgomery's alleged disability. (*Id.* at 5-6.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

On March 31, 2011, after removal, Plaintiffs filed the consolidated motion for sanctions for abuse of discovery process and to quash subpoenas that is presently before the Court. (R. 17.) Plaintiffs take issue with subpoenas that Defendants served on a nonparty witness, Cynthia Frye. (*Id.* at 2.) They object that, "[a]lthough an attorney can certainly interview a witness, it is patently improper to do so by using a subpoena to compel a witness to come to an office to be interviewed[.]" (*Id.* at 4.) They further submit that Defendants improperly applied coercive tactics on Ms. Frye, presenting her with a four-page affidavit, "which she hurriedly reviewed and signed, but which contained mischaracterizations[.]" (*Id.* at 3.) Plaintiffs also contend that Defendants did not serve them with copies of the subpoenas that the latter served on Ms. Frye. (*Id.* at 2-3.) Plaintiffs thus request that this Court enter an order providing that "all information obtained through the abuse of discovery procedures as described above including, but not limited to the affidavit obtained from Ms. Frye be suppressed; award Plaintiffs their reasonable attorney's [*sic*] fees in connection with time spent bringing this Motion; and such other relief as this Honorable Court deems necessary and just." (*Id.* at 5.)

Furthermore, Plaintiffs seek to quash subpoenas that Defendants served on U.S. Employee Credit Union, Capital One, Chase Card Services, Citi Financial Retain Services, HSBC Card Services, JC Penney, Macy's, Target Corporation, Chase Manhattan Mortgage Corp., and GMAC Mortgage. (*Id.* at 5-7.) These subpoenas seek information about Ms. Montgomery's credit-card and bank-account activities from October 8, 2008, through January 2009—the period in which Ms. Montgomery maintains that she was legally disabled. Plaintiffs submit that, "[i]n seeking to subpoena documents regarding all of Plaintiff's financial activities, Defendants have engaged in an abusive fishing expedition which is far beyond the scope of permissible discovery in this case[.]" (*Id.* at 7.)

## I. State Procedural Law Governs Pre-Removal Conduct, but Federal Procedural Law Applies to Post-Removal Conduct

A preliminary question concerns the parties' dispute over the operative procedural law that governs the instant consolidated motion. Defendants submit that federal law applies to the instant dispute, while Plaintiffs maintain otherwise on the ground that "the Motion alleges violations of state rules, while the case was pending in the Circuit Court." (R. 25 at 1-2; R. 28 at 2.) Neither side cites any case law in favor of, or against, their respective positions. (*Id.*)

The Court determines that state procedural rules apply to conduct that predated removal, but that federal procedural rule govern post-removal conduct. *See Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 (7th Cir. 2001) ("The Federal Rules make clear that they do not apply to filings in state court, even if the case is later removed to federal court. . . . The parties do disagree, however, as to the applicability of Illinois Supreme Court Rule 103(b) to the case. The Romos claim that the rule has no place in federal court because it is procedural . . . Gulf Stream asserts in reply that the state rule is the proper tool to test the diligence of service effectuated prior to removal. We agree with Gulf stream and conclude that federal courts may apply state procedural rules to pre-removal conduct.") (citations omitted); *see also Price v. Wyeth Holdings Corp.*, 505 F.3d 624, 628 (7th Cir. 2007) ("Because federal procedure does not apply until removal occurs, we apply state rules to preremoval conduct.") (internal citation omitted). *See generally* Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."). *But cf. Porte v. Home Fed. Sav. & Loan Ass'n of Chi.*, 409 F. Supp. 752, 753 (N.D. Ill. 1976) ("In our judgment, Rule 81(c) does not mean that all pleadings filed before removal need be judged only according to state court procedure. The word 'after' is not meant as a time cut-off. We believe the sense of the rule is that removed actions are to be governed by the federal rules, at least in regard to matters involving more than mere form, to the same extent as cases originally filed in the district court. Such an interpretation is, we think, consistent with orderly procedure.").

## II. The Court Denies Plaintiffs' Motion for Sanctions for Abuse of Discovery Process

Plaintiffs first seek sanctions on account of the subpoenas that Defendants served on "Cynthia Frye Realty, Inc., c/o Cynthia Frye[.]" (R. 17-1 at 1, 3.) Plaintiffs submit that these subpoenas improperly compelled Ms. Frye "to come to an office to be interviewed[.]" (R. 17 at 4.) Having reviewed these documents, the Court concludes that no reasonable recipient would read them as purporting to require physical appearance. The substance of the subpoenas comprises four separate sentences, the last of which prominently states in large, highlighted font: "*THIS SUBPOENA IS FOR RECORDS ONLY. IF YOU COMPLY, YOUR APPEARANCE WILL NOT BE NECESSARY.*" (R. 17-1 at 1, 3) (emphasis in original). Plaintiffs' argument to the contrary fails.[1]

Plaintiffs next submit that Defendants used "coercive tactics" to induce Ms. Frye into signing an affidavit with which she did not agree. (R. 17 at 3-4; R 28 at 2.) They state that Defendants "coercively kept [Ms. Frye] at counsel's office for a total of almost four hours" and contend that Defendants conducted an "interrogation" in an "intimidating manner." (R. 28 at 3.) To evidence these contentions, Plaintiffs rely on Ms. Frye's second affidavit. This affidavit, however, does not support Defendants' characterization. It provides, in pertinent part, that when Ms. Frye appeared at Defendants' attorneys' office:

> Bill Oberts . . . told me he wanted to question me and directed me to remain in the conference room at his office, despite the fact that I had to attend class at 12:00 p.m. After approximately two hours of questioning, Mr. Oberts asked me to continue to wait at his office while an Affidavit was prepared for my signature. . . . After waiting for approximately one hour for the affidavit to be prepared, I informed the receptionist at the office that I had to leave [for] . . . an appointment. Approximately twenty minutes later, Mr. Oberts escorted me back to the conference room, gave me an Affidavit he had prepared and told me to sign it. I rushed to review the document because, as I repeatedly told Mr. Oberts, I was under a time constraint to get to an appointment. Many statements contained in the Affidavit, in particular, those relating to Belinda Montgomery's mental state, were not my words, but rather, the characterization of Ms. Montgomery put into the Affidavit by Mr. Oberts. I felt compelled to sign the Affidavit at the time.

(R. 17-3 at 1-2.) In this affidavit, Ms. Frye does not aver that she was subject to interrogation, intimidation, or coercion. It is Plaintiffs who advance this hyperbolic characterization. Furthermore, the affidavit that Ms. Frye previously signed on January 25, 2011, reveals that she did review the provisions of the same by making a number of handwritten corrections. (R. 17-2 at 1-4.) The Court declines to suppress Ms. Frye's first affidavit on this ground.

Plaintiffs also argue that "Defendants' counsel did not provide Plaintiffs' counsel with copies of the subpoenas served upon Ms. Frye, in violation of Illinois Supreme Court rule 204(a)(4)." (R. 17 at 3.) Defendants have introduced a copy of a notice of subpoena deposition that they served on Plaintiffs' attorneys on June 23, 2010—well in advance of when they served the subpoenas on Ms. Frye. (R. 25 at 9-10, 73-74.) Yet, this notice stated that the subpoena sought records from Cynthia Frye on July 23, 2010, while the subpoena at issue in the instant motion sought records from Ms. Frye on January 24, 2011. (R. 17-1 at 1, 3.) In fact, the state court quashed the subpoenas requiring a July 23, 2010, production because an individual not of record issued them. (R. 17-4 at 1.) Defendants have therefore failed to introduce evidence that they served Plaintiffs with copies of the subpoenas served upon Ms. Frye that are relevant to the instant motion.

---

[1] Plaintiffs contend that "[t]he true purpose of the subpoena . . . is set forth only in a footnote." (R. 28 at 3.) This characterization significantly understates the prominence of the subpoena provision that it sought "record only."

Plaintiffs submit that Defendants have violated Illinois Supreme Court Rule 204(a)(4) by failing to provide Plaintiffs' counsel with copies of the subpoena served upon Ms. Frye. This rule provides as follows:

> *Production of Documents in Lieu of Appearance of Deponent.* The notice, order or stipulation to take a deposition may specify that the appearance of the deponent is excused, and that no deposition will be taken, if copies of specified documents or tangible things are served on the party or attorney requesting the same by a date certain. That party or attorney shall serve all requesting parties of record at least three days prior to the scheduled deposition, with true and complete copies of all documents, and shall make available for inspection tangible things, or other materials furnished, and shall file a certificate of compliance with the court. Unless otherwise ordered or agreed, reasonable charges by the deponent for production in accordance with this procedure shall be paid by the party requesting the same, and all other parties shall pay reasonable copying and delivery charges for materials they receive. A copy of any subpoena issued in connection with such a deposition shall be attached to the notice and immediately filed with the court, not less than 14 days prior to the scheduled deposition. The use of this procedure shall not bar the taking of any person's deposition or limit the scope of same.

ILCS S. Ct. Rule 204(a)(4).

The Court does not read Rule 204(a)(4) as in itself requiring an attorney seeking the production of documents in lieu of an appearance of a deponent to serve notice on the other parties. Indeed, Plaintiffs do not point the Court toward any Illinois case law suggesting otherwise.[2] (R. 17; R. 28.) By its terms, Rule 204(a)(4) only requires that "[a] copy of any subpoena issued in connection with such a deposition shall be attached to the notice and immediately filed with the court, not less than 14 days prior to the scheduled deposition." ILCS S. Ct. Rule 204(a)(4).

Nevertheless, Illinois Supreme Court Rule 104(b) provides that "papers required to be filed shall be filed with the clerk with a certificate of counsel or other proof that copies have been served on all parties who have appeared and have not theretofore been found by the court to be in default for failure to plead." ILCS S. Ct. Rule 104(b). Rule 204(a)(4) requires an attorney who serves a subpoena seeking to obtain documents in lieu of the deponent's appearance to file the subpoena and notice with the court. Therefore, Rule 104(b) requires such an attorney also to file proof that she has served copies of the same on all parties who have appeared. Plaintiffs maintain that Defendants did not serve them in this manner, and Defendants have not produced any evidence to the contrary.

The ensuing issue concerns the effect of Defendants' failure to abide by Rule 104(b). This rule "does not categorically invalidate filings for failure to show service of notice absent an affirmative showing of prejudice." *Jones v. Ill. Educ. Labor Relations Bd.*, 650 N.E.2d 1092, 1101 (Ill. App. Ct. 1995); *see also Hartman v. Pitts. Corning Corp.*, 634 N.E.2d 1133, 1147 (Ill. App. Ct. 1994) ("In the case at bar, defendant had knowledge that both parties were filing motions objecting to portions of the Lewis testimony. There was no unfair surprise to defendant, nor do we believe that defendant was prejudiced by plaintiff's failure to serve."); *In re Am. Mut. Reinsurance Co.*, 606 N.E.2d 32, 38 (Ill. App. Ct. 1992) (noting that "Supreme Court Rule 104 addresses the

---

[2] In contrast, Illinois Supreme Court Rule 206 provides that "[a] party desiring to take the deposition of any person upon oral examination shall serve notice in writing a reasonable time in advance on the other parties. The notice shall state the time and place for taking the deposition; the name and address of each person to be examined, if known, or, if unknown, information sufficient to identify the deponent; and whether the deposition is for purposes of discovery or for use in evidence." ILCS S. Ct. Rule 206(a). As noted above, the subpoenas in the present case sought "records only." (R. 17-1 at 1, 3.)

issue of notice to parties" and concluding that, "although Wausau did not receive notice . . ., it was not harmed or prejudiced").

Plaintiffs do not explain how Defendants' violation of Rule 104(b) prejudiced them.  Indeed, there is no dispute that Defendants served Plaintiffs with notice of their prior attempt to subpoena documents from Ms. Frye, and that Plaintiffs were aware that the state court quashed the subpoenas because an individual not of record issued them.  It would hardly have been surprising to Plaintiffs that Defendants would reissue the subpoenas in the proper manner.[3]  Furthermore, in seeking the sanction of suppressing Ms. Frye's affidavit, Plaintiffs focus on their allegation that Defendants improperly used the subpoenas "to deceive a witness into believing she was compelled to appear at defense counsels' office, and engaging in coercive tactics to obtain an inaccurate affidavit from the witness."  (R. 28 at 1-2.)  Their apparently well-founded assertion that they "never received notice of the subpoena personally served on Ms. Frye" receives considerably less prominent treatment in their argument for sanctions.

Last, but certainly not least, Plaintiffs do not explain how they would have acted had they received notice of the relevant subpoenas.  Given that those subpoenas sought records only, it is far from clear that Plaintiffs would have seen fit to appear at Defendants' attorneys' office on the day the subpoena called for production.  Indeed, such an appearance would have been unavailing on account of the fact that Ms. Frye appeared at Defendants' counsels' office on January 25, 2011, the day after the return date for the documents listed on the subpoena.[4]  (R. 25 at 10, 78.)  In light of these factors, Plaintiffs have failed to establish prejudice sufficient to warrant suppression of Ms. Frye's affidavit.

## III.    The Court Denies Plaintiffs' Motion to Quash Subpoenas

Defendants have served subpoenas on third parties U.S. Employee Credit Union, Capital One, Chase Card Services, Citi Financial Retain Services, HSBC Card Services, JC Penney, Macy's, Target Corporation, Chase Manhattan Mortgage Corp., and GMAC Mortgage.  (R. 17-5 at 1-8.)  According to Plaintiffs, these subpoenas seek "broad categories of information relating to the financial activities and financial standing of Belinda Montgomery, including information regarding all of Plaintiff's checking accounts, credit card activities[,] and mortgage records."  (*Id.*)

The parties have only introduced copies of the first pages of the subpoenas without including the attachments detailing the precise documents that the subpoenas seek.  (R. 17-5 at 1-8.)  Nevertheless, the parties do not dispute that the subpoenas call for the production of documents relating to Ms. Frye's credit-card and bank-account activities.  (R. 17; R. 25.)  Defendants observe that the subpoenas seek documents only from October 8, 2008, through January 2009—the time period of Ms. Frye's alleged disability.  (R. 25 at 5.)  Plaintiffs do not contest this characterization in reply.  (R. 28.)

Plaintiffs submit that "[t]he documents sought are not only overly broad, they are irrelevant to any issue relating to the merits of Plaintiffs' claims."  (R. 17 at 7.)  They further contend that Defendants are "engaging in a fishing expedition, which is far beyond the scope of permissible discovery in this case."  (R. 28 at 5.)  The Court disagrees.  Plaintiffs have alleged legal disability on the part of Ms. Frye so as to toll the Illinois statute of limitations.  Defendants seek financial documents that could reveal the scale and nature of Ms. Frye's activities during the period of alleged disability.  Those documents are therefore both relevant and discoverable.  *See* ILCS

---

[3] Of course, this did not excuse Defendants of their obligations to abide by Illinois Supreme Court Rule 104(b) in reissuing the subpoenas.  Nevertheless, the fact of prior notice is relevant to the question of prejudice to Plaintiffs.

[4] Ms. Frye's second affidavit states that she appeared at Defendants' counsels' office on January 24, 2011.  (R. 17-3 at 1.)  Ms. Frye, however, signed the first affidavit on January 25, 2011.  (R. 17-2 at 4.)

S. Ct. Rule 201(b)(1) ("Except as provided in these rules, a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure or of any other party[.]"). Furthermore, the fact that the subpoenas only seek documents for the period of Ms. Frye's asserted disability demonstrates that they are tailored to the issue in the case and are not overbroad. In addition, an appropriate protective order can ensure the confidentiality of Ms. Montgomery's financial information. *See* Fed. R. Civ. P. 26(c).

The Court therefore denies Plaintiffs' motion to quash subpoenas.

## IV. The Parties Must Brief the Question Whether Plaintiffs Should Pay Defendants Their Reasonable Expenses, Including Attorneys' Fees

There is a real question whether Plaintiffs' motion for sanctions and to quash subpoenas was substantially justified. Plaintiffs' argument that the subpoenas Defendants served on Ms. Frye "compelled a witness to come to an office to be interviewed" is clearly unsupportable. These subpoenas explicitly stated: "*THIS SUBPOENA IS FOR RECORDS ONLY. IF YOU COMPLY, YOUR APPEARANCE WILL NOT BE NECESSARY.*" (R. 17-1 at 1, 3) (emphasis in original). This language is immediately apparent from even a casual inspection of the document. It is not buried in text, but appears prominently on the front of the subpoena, highlighted and in font of comparable size to the other material provisions of the document. Nor is there support for Plaintiffs' assertion that Defendants intimidated and interrogated Ms. Montgomery to induce her to sign the first affidavit. Ms. Montgomery's second affidavit does not recount such an event, and her handwritten changes to the first affidavit reveal that she read the same before signing.

Plaintiffs' argument that Defendants are not entitled to documents pertaining to "the financial activities and financial standing of Belinda Montgomery" because those documents do "not meet the threshold requirements of relevance to matters actually at issue in the case" is equally misplaced. The definition of relevance is broad, encapsulating evidence having "any tendency" to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401; *see also Boyd v. United Farm Mut. Reins. Co.*, 596 N.E.2d 1344, 1347 (Ill. App. Ct. 1992) ("The Illinois Supreme Court has adopted Rule 401 of the Federal Rules of Evidence, which defines relevance[.]"). Furthermore, parties are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1); ILCS S. Ct. Rule 201(b)(1); *see also Cordeck Sales, Inc. v. Constr. Sys., Inc.*, 917 N.E.2d 536, 544 (Ill. App. Ct. 2009) ("The broad scope of permitted discovery requires production of evidence if it would be sufficiently relevant and material to be admissible at trial or if it leads to such relevant and material evidence"). The alleged fact of Ms. Montgomery's disability is of potentially great importance to Plaintiffs' case in light of Defendants' statute-of-limitations defense. It bears emphasizing that Defendants' subpoenas are not overbroad, but seek financial records limited to the period of Ms. Montgomery's claimed disability. Furthermore, a suitable protective order can ensure the confidentiality of Ms. Montgomery's financial information. *See* Fed. R. Civ. P. 26(c).

In light of the above, there is a genuine question whether Plaintiffs must pay Defendants their reasonable expenses, including attorneys' fees. Federal Rule of Civil Procedure 37 provides that, if it denies a discovery motion, "the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's [*sic*] fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). The Court will therefore grant the parties an opportunity to be heard on this matter. Defendants must file a brief addressing this issue within one week of the entry of this order. Plaintiffs shall then file a response within five days.